ROBBIE BONDS *v.* STATE OF INDIANA.

[No. 1069S238. Filed March 30, 1972.]

*Paul V. Rumple, William C. Erbecker,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of the crime of Safe Burglary (Acts of 1905, ch. 169, § 374a, Acts of 1955, ch. 156, § 1, 1956 Repl. Burns Ind. Stat. Ann. § 10-702a), he was sentenced to imprisonment for not less than five nor more than ten years. This appeal presents one question reviewable by the court, i.e. did the trial court err in overruling his motion for a mistrial for misconduct of counsel?

In the process of the trial, Police Officer Duckworth testi-

fied on direct examination that in the course of his duties he was patrolling an alley checking for "break-ins," when he came upon circumstances that aroused his suspicions. He turned a spotlight upon the rear of a tavern building, whereupon he observed a man "break and run north between the buildings." As he pursued, he heard an automobile start up and drive away at high speed. He gave chase and fired four shots at the automobile. The following testimony and dialogue followed, prior to which there had been no identification made of the fleeing person, other than that he was white and approximately five feet tall.

"Q.  All right.  Did you yell any command to him?
A.  I yelled for Robbie Bonds to stop. I told . . .
    MR. CARSON:  I am going to object . . .
A.  . . . Robbie, I said stop.
    MR. CARSON:  Your Honor, to Robbie Bonds stopping, it hasn't been established that Robbie Bonds was the one that running. (sic). That is a conclusion on the officer's part.
    THE COURT:  It wouldn't be a conclusion if he knew him, and said he recognized him.
    MR. CARSON:  It hasn't been established yet, Your Honor, that he had known him.
    THE COURT:  I think it is probably premature. I will order the answer stricken and the jury will completely disregard it. You can lay the proper foundation for it.
    MR. KREMER:  All right.

Q.  Do you know the defendant, Robbie Bonds?
A.  Yes, sir, I do.

Q.  Do you see him in Court today?
A.  He is sitting next to, in the gray suit.
    MR. KREMER:  All right, Your Honor, may the record show that the witness has identified the defendant, Robbie Bonds.
    THE COURT:  All right. Go ahead.

Q.  Now do you know the other defendant, Larry Stotts?
A.  No sir, that's the first time I seen him was during this case.

Q. All right. Now how is it that you know Robbie Bonds?

A. I've arrested him prior, before this, I've arrest (sic) him before.

MR. CARSON: Now at this time, Your Honor, the defendant, Robbie Bonds, would move for a discharge, or a mistrial on this particular charge because the State has indirectly put this man's record in evidence when he has not taken the stand and opened the door for such evidence.

THE COURT: The motion is overruled. The answer is ordered stricken from the record. The jury is ordered to completely disregard the answer and put it completely out of your mind. All right, now let's get on with the case.

Q. You had seen Robbie Bonds before?

A. Yes, sir, I know him.

Q. How many times have you seen him?

A. Several times, I've know him approximately ten years.

Q. All right. How would you describe him?

A. Approximately five foot tall, about a hundred and twenty-five pounds.

Q. All right. And can you describe the man you saw running on this particular night?

A. The man was short and he was slim.

Q. And any other description on this particular night?

A. No, sir, not other than the clothing."

The witness' answer, "I yelled for Robbie Bonds to stop," was improper as being not responsive, but it could not be attributed to counsel; nor in view of subsequent identifying testimony, could it have been harmful.

The question, "How is it that you know Robbie Bonds?" was not, in and of itself, improper. It is altogether appropriate for counsel to present evidence which lends credibility to the testimony of his witness. It, perhaps, was inarticulately phrased, and it did bring forth an answer that was prejudicial to the defendant's rights. We cannot say, however that it was designed for such purpose. Assuming it arguendo to have been misconduct, did it warrant the declaration of a mistrial?

We think not. It is to be noted in both instances complained of, the trial judge promptly instructed the jury to disregard the answers, and we think this sufficient under the circumstances of this particular case. The general rule of Indiana is that the granting of a mistrial rests largely in the sound discretion of the trial judge. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312; *Duke* v. *State* (1968), 249 Ind. 466, 233 N. E. 2d 159; *Greenwalt* v. *State* (1965), 246 Ind. 608, 209 N. E. 2d 254.

In *White* v. *State, supra,* we reversed for failure to declare a mistrial in a trial where a police officer gave improper evidence of a prior arrest. The similiarity of the two cases, however, ends there. In the case at bar, not only do we have substantial uncontroverted evidence of the defendant's guilt, the circumstances that compelled the reversal in the *White* case are absent here.

Defendant, under point three of the argument section of his brief has alluded to allegedly erroneous instructions. Such instructions, however, are not set out, and no error was alleged in this respect in the motion to correct errors. Error, if any, in this respect is, therefore, not available. Trial Rule 59 (G) provides in relevant part:

> "* * * Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court."

Appellate Rule 8.3 (A) (7) provides in relevant part:

> "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto."

Further, the record discloses no objection by Defendant with reference to instructions given or tendered and refused.

Defendant has abandoned his assertion, set forth in his motion to correct errors, that the verdict was not sustained

by sufficient evidence, by failure to present argument relative thereto in his brief. He has alluded to such an insufficiency in his argument relative to the denial of a mistrial in a futile effort to convince us that it was the prosecutor's misconduct and the police officer's erroneous testimony that prompted his conviction, rather than sufficient competent evidence. Our examination of the bill of exceptions discloses ample evidence to sustain the verdict under the requirements many times heretofore pronounced and so well summarized and presented in *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, including the testimony of an accomplice who related the entire episode. In view of the aforesaid waiver, however, we deem it unnecessary to elaborate.

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C. J. and Givan and Hunter, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—I dissent. This case is one of a growing number of cases in which an overzealous law enforcement officer, apparently unschooled or unappreciative of the notion of fundamental fairness in a trial situation, puts before the jury the fact that he has arrested the appellant before, thereby greatly increasing the probability of a guilty verdict. Such an irresponsible comment at the trial not only prejudices the case against the accused, but it also costs the State time and money in the handling of the appeal which follows, and puts off the final disposition of the case. It would seem a simple matter to educate officers in the fundamentals of due process such that they would be aware that references to prior involvement with the law either by arrests or convictions are *strictly forbidden,* except in narrowly specified circumstances. The number of recent cases in which police officers have "slipped in" this prejudicial information demonstrates that they have not been so instructed. See, for example, *Moore* v. *State* (1972),

258 Ind. 200; *Duvose* v. *State* (1971), 257 Ind. 450, 275 N. E. 2d 536; *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312; *Duke* v. *State* (1968), 249 Ind. 466, 233 N. E. 2d 159. I believe a strong line should be taken in this area, and any reference to a prior arrest or conviction by a police officer or other professional type witness should, in my opinion, be grounds for a mistrial.

Certainly the error in this case was not harmless where the appellee's case rested solely on the testimony of an accomplice and the testimony of the police officer who never explicitly and clearly said that he knew at the time of the incident that the man fleeing was in fact the appellant. It is clear that the officer knew appellant for some years prior to the trial, but it is *not* clear that he knew the man running was that same Robbie Bonds. The trial court struck the testimony where the witness said he yelled for appellant to stop. He was then asked if he knew appellant and the witness pointed him out in court and testified that he had met him several times over a period of ten years and had arrested him before. The witness then described appellant and was asked to describe the man that fled. The witness said the running man was short and slim. When asked if there was any other description he could make the witness said "No, sir, not other than his clothing." Although the witness was offered a perfect opportunity to say the running man was appellant, the witness *did not do so*. The majority opinion offers no reason to think that such testimony coupled with accomplice testimony was so solid that the evidential harpoon was harmless.

NOTE.—Reported in 280 N. E. 2d 313.